# First Church of Christ, Scientist.

*Corporations—Charter—Practice of medicine—Christian Science.*

An application for a charter " to establish and maintain a place for the support of the public worship and to preach the gospel according to the doctrines of Christ Jesus, as found in the Bible, and the Christian Science text book ' Science and Health, with Key to the Scriptures,' by Mary Baker G. Eddy," will be refused, where the evidence shows that the purpose of the incorporators was not merely to establish a form of worship, but to train persons for the treatment of disease simply and solely by inaudible prayer in the presence of the sick or at a distance ; that to qualify for the practice of healing disease, nothing was necessary except the study of the system taught in Mrs. Eddy's book, without any knowledge of anatomy, physiology, pathology or hygiene being required, the whole system being based upon the theory that all diseases even those of a contagious character were mere beliefs and not real facts. Such a system is opposed to the general policy of the law of Pennsylvania relative to the existence and treatment of disease.

Argued Jan. 23, 1903. Appeal, No. 279, Jan. T., 1902, by Charles J. Moore et al., from decree of C. P. No. 4, Phila. Co., Dec. T., 1901, No. 2976, dismissing exceptions to master's report in case of First Church of Christ, Scientist. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Application for a charter.

The application was referred to Dimner Beeber, Esq., who reported the facts to be as follows :

The applicants are members of a congregation composed of about 180 persons, who have been worshipping in the church edifice on Chestnut street above Eighteenth street. They have been a congregation for about ten years, and desire to be incorporated as a church under the laws of the state of Pennsylvania. The purposes for which they desire to be incorporated are stated in clause I of their application, as follows : " To establish and maintain a place for the support of public worship and to preach the gospel according to the doctrines of Christ Jesus as found in the Bible and the Christian Science Text Book, ' Science and Health, with Key to the Scriptures,' by Mary Baker G. Eddy." The witnesses uniformly agree

that the Christian Science Church "differs from other Christian beliefs in endeavoring to practice the entire command of the Master who founded the Christian religion, in which he said, 'Preach the Gospel and heal the sick.' The ordinary church attempts merely to preach the gospel. The Christian Science Church preaches the gospel and heals the sick." It appears that the method of healing the sick is simply and solely by inaudible prayer. The book of Mrs. Eddy, entitled, "Science and Health, with Key to the Scriptures," shows that the church is not only an organization to inculcate a creed or to establish a form of worship, but also to accomplish the cure of disease. Not only does the church preach the gospel as found in the Bible and in the book of Mrs. Eddy, but it also, through its healers, attempts the cure of disease. In fact, the longest chapter in the book is entitled "Christian Science Practice," and contains instructions in detail as to the mode of treatment. The fundamental principle of the teaching is that what is termed disease has no real existence. The doctrine is set forth on page 188, as follows : "What is termed disease does not exist," and on page 184 as follows : "The so-called laws of health are simply laws of mental belief. The premises being erroneous, the conclusions are wrong. Truth makes no laws to regulate sickness, sin or death, for these are unknown to the truth and should not be recognized by man as reality." Again, on pages 393-4 the doctrine is taught that man is never sick; that his belief that he is, is the disease and the cause of it, and that the universal and perfect remedy is to understand that his sickness is not real; and again, on page 395, "When divine science overcomes faith in materia medica, and faith in God destroys faith in drugs and all material methods of healing—sin, sickness and death will disappear," and again, on page 400 : "When disease is once destroyed in mind, the fear of it is gone, and therefore it is thoroughly cured," and again, on page 176 : "Christian Science heals organic disease as well as functional. It finds that decided types of acute disease are quite as ready to yield to truth as the less distinct types and chronic form of disease. It handles the most malignant contagion with perfect assurance."

The chapter on "Christian Science Practice" contains instruc-

tions for the treatment and cure of disease upon the idea that disease is simply an idea of the mind, as set forth in the above extracts from the book. The healers who engage in the cure of the disease are constituted by the readers at the different churches, and in fact, according to the book, any of its students can acquire the power to heal and cure disease in the mode therein prescribed. It is the common but not universal practice for these healers to receive a compensation for their services. As I have already said, their services chiefly consist in inaudible prayer and either in the presence or far away from the patient.

The facts are substantially the same as those passed upon by Judge PENNYPACKER in court of common pleas, No. 2, in a similar action, although they have not been testified to in such great detail as appeared in the report of that case, from which it can be said, as he said there, "It is quite clear, therefore, that what is proposed is much more than a church, since there is besides to be established a system for the treatment of disease, to be carried into effect by persons trained for the purpose, who may receive compensation for their services."

It seems clear to the master that the evidence and the teaching of Mrs. Eddy's book show that there is to be established not only a place for worship, but also for the establishment of a system for the practice of the art of healing. Medicine has been defined to be "the art of preventing, curing, or alleviating diseases and remedying, as far as possible, the results of violence and accident." The system taught by Mrs. Eddy's book certainly would come under this definition of the word "medicine," and it would seem that she herself conceded it, for, on page 463 of her book, she states the result of her work as follows: "In founding an ethical and medical system, I have labored to expound divine principle, not to exalt personality." The witnesses who testified before the master in this case are very clear that one of the prime purposes of their church, and the one that distinguishes it from the orthodox church, is that it attempts to heal the sick. It is impossible to conceive of the Christian Science Church except as associated with the idea of healing or curing the sick.

The master recommended that the application should be refused on the ground that it would be injurious to the com-

munity to incorporate a group of citizens for the purpose stated. On exceptions to the master's report ARNOLD, P. J., filed an opinion refusing a charter on the ground that the application was for a charter for an association for profit organized to enforce the sale of Mrs. Eddy's books by its members. Subsequently ARNOLD, J., filed a supplemental opinion which was as follows :

Objection having been made that we went outside of the record in our former opinion, attention is called to the fact that applications for charters are generally conducted ex parte, no opposition being made unless another association alleges that the applicants are infringing upon its corporate name. When an application for a charter is made the court acts for the commonwealth, and should not permit the applicants by withholding evidence of material facts, to obtain a charter for one purpose in the guise of another. The court should search for and obtain all the information necessary to a proper knowledge of the purposes of the intended corporation in order to enable the court to determine its power and its duty in the case before it. We appoint masters to assist us in these matters, but we are not confined to or bound by the evidence produced before them.

Even if the court had power to charter this association, it should refuse to give its sanction to a body organized for the purpose for which this association has been established.

The master has found that " the witnesses uniformly agree that the Christian Science Church differs from other Christian beliefs in endeavoring to practice the entire command of the Master who founded the Christian religion, in which he said, ' Preach the gospel and heal the sick.' The ordinary church attempts merely to preach the gospel. The Christian Science Church preaches the gospel and heals the sick. It appears that the method of healing the sick is simply and solely by inaudible prayer." The master also finds that " The book of Mrs. Eddy, entitled ' Science and Health, with Key to the Scriptures,' shows that the church is not only an organization to inculcate a creed or to establish a form of worship, but also to accomplish the cure of disease. Not only does the church preach the gospel as found in the Bible and in the book of Mrs. Eddy, but it also, through its healers, attempts to cure disease." He also finds that " the fundamental principle of the teaching is that

what is termed disease has no real existence." The doctrine is set forth on page 188 as follows : "What is termed disease does not exist," and on page 184 as follows : "The so-called laws of health are simply laws of mental belief . . . . Truth makes no laws to regulate sickness, sin or death, for these are unknown to truth and should not be recognized by man as reality." Quoting from pages 393 and 394 of "Science and Health," the master finds that "the doctrine is taught that man is never sick, that his belief that he is is the disease and the cause of it, and that the universal and perfect remedy is to understand that his sickness is not real." From page 395 he quotes, "When divine science overcomes faith in materia medica and faith in God destroys faith in drugs, all material methods of healing, sin, sickness and death will disappear." And from page 400, "When disease is once destroyed in mind the fear of it is gone, and therefore it is thoroughly cured." He also quotes from page 176 as follows : "Christian Science heals organic disease as well as functional. It finds that decided types of acute disease are quite as ready to yield to truth as the less distinct types and chronic forms of disease. It handles the most malignant contagion with perfect assurance."

These statements are palpable fallacies, and as long as they are merely inactive beliefs they may do no harm, but when they are put into practice they are pernicious and injurious to the community. When this practice is confined to the healers no harm results to others, but when they apply it to children or persons so racked with pain that in their desperation they resort to any theory or practice which promises relief, such practice results in neglect of proper treatment and often in death.

The master has found that "the healers who engage in the cure of disease are constituted by the readers at the different churches, and in fact, according to the book, any of its students can acquire the power to heal and cure disease in the mode therein prescribed. It is the common but not the universal practice for these healers to receive a compensation for their services. As I (the master) have already said, their services chiefly consist in inaudible prayer either in the presence of or far away from the patient." He also finds that "the evidence and the teachings of Mrs. Eddy's book show that there is to be established not only a place for worship, but also for the es-

tablishment of a system for the practice of the art of healing.
. . . . The witnesses who testified before the master in this case
are very clear that one of the prime purposes of their church
and the one that distinguishes it from the orthodox church, is
that it attempts to heal the sick. It is impossible to conceive
of the Christian Science Church except as associated with the
idea of healing or curing the sick." When persons who make
a business of practicing the art of healing with or without medi-
cine, are not regular and registered physicians, they violate
the law which was intended to prevent the practice of medicine
by nonqualified persons. It was for this reason that Judge
PENNYPACKER, in the court of common pleas, No. 2, refused a
charter to an association of persons like those before us, and
we agree with him. See 6 Pa. Dist. Rep. 745.

*James W. Laws*, for appellant, cited: State v. Mylod, 20 R. I.
632 (40 Atl. Repr. 753); Wheeler v. Sawyer, 15 Atl. Repr.
67; State v. Anthony, 20 R. I. 644 (40 Atl. Repr. 1135);
People v. Gordon, 194 Ill. 560 (62 N. E. Repr. 858); State
v. Buswell, 40 Nebraska, 158 (58 N. W. Repr. 728); Little v.
State, 84 N. W. Repr. 248; Eastman v. People, 71 Ill. App.
236; Jones v. People, 84 Ill. App. 453; People v. Jones, 92
Ill. App. 445.

*John Weaver*, for appellee, cited: State v. Buswell, 40 Neb.
158 (58 N. W. Repr. 728); Little v. State, 84 N. W. Repr.
248; Bibber v. Simpson, 59 Me. 181; People v. Gordon, 194
Ill. 560 (62 N. E. Repr. 858); Harrison v. State, 102 Ala. 170
(15 So. Repr. 563); Blalock v. State, 112 Ga. 338 (37 S. E.
Repr. 361); Reg. v. Macleod, 12 Cox's Crim. Cases, 534; Mc-
Candless v. McWha, 22 Pa. 261; First Church of Christ, Scien-
tist, 6 Pa. Dist. Rep. 745; Eastman v. People, 71 Ill. App. 236;
Jones v. People, 84 Ill. App. 453; People v. Jones, 92 Ill.
App. 445.

OPINION BY MR. JUSTICE POTTER, May 4, 1903:

The appellants in this case are members of an unincorporated
society, and desire to be incorporated as a church, under the
laws of the state of Pennsylvania. Their application as pre-
sented to the court below, sets forth that the purposes for
which the said corporation is to be formed, are " to establish

and maintain a place for the support of public worship and to preach the gospel according to the doctrines of Christ Jesus as found in the Bible and the Christian Science text book, 'Science and Health, with Key to the Scriptures,' by Mary Baker G. Eddy."

The application was referred to the Hon. Dimner Beeber as master, who reported that an examination of Mrs. Eddy's book showed that the church which it was proposed to organize was not merely to inculcate a creed, or to establish a form of worship, but was also intended for the treatment and cure of disease, through the healers which it is to train and constitute. That the method to be pursued by these healers in curing the sick, is simply and solely by inaudible prayer, whether in the presence of the sick or at a distance, being immaterial. That to qualify for the practice of healing disease according to this method, nothing was necessary except the study of the system taught in Mrs. Eddy's book, no knowledge of anatomy, physiology, pathology or hygiene being required. The fundamental principle of the teaching of Mrs. Eddy being that what is termed disease, has no real existence. That "sickness, sin and death are unknown to truth, and should not be recognized by man as reality." According to the testimony she teaches that inflammation, tuberculosis, hemorrhage and decomposition are beliefs and not real facts. The master points out that this theory is directly opposed to the general spirit and purpose of the laws of Pennsylvania, with regard to the public health, and the treatment of disease. That the quarantine and inspection laws, and the enactments designed to prevent contagion and infection are all based upon the theory that disease is a reality, and that it exists without reference to the condition of mind of its subject. The master reaches the conclusion that "it would be injurious to the community to incorporate a group of citizens who would teach the doctrine that there is no such thing as a contagious disease, or any disease, and practice the art of curing what are called contagious diseases in the manner above described." He further refers to the established policy of the commonwealth, which in the interest of the public good, requires certain qualifications in persons who presume to treat and cure disease, and he tersely adds, "what the good of the community requires under

the law as it exists ought not to be imperilled by the incorporation of a group of citizens whose fundamental doctrine is, that the public good requires no such thing." He therefore recommended that the application for the charter be refused.

The court below did refuse to approve the charter, and filed a short opinion, basing the refusal upon the ground that the proposed incorporation was in part at least for profit. Afterwards, in a supplemental opinion, he summarized, and adopted the findings of the master, and refused his sanction to the charter upon the ground that the purpose disclosed was improper, and in violation of the law which was intended to prevent the practice of medicine by nonqualified persons.

We are inclined to think that the evidence was not sufficient to support a finding that the corporation itself was to be one for profit. There was proof that the individual healers who are constituted and sent out by the society, do receive compensation for their services, but this seems to be a personal recompense, with which the society has nothing to do. But the court below in its supplemental opinion, went beyond this question and adopted in substance the conclusion of the master, that the practice of the art of healing or curing disease in the manner set forth in Mrs. Eddy's book is injurious to the community, because it is opposed to the general policy of the law of Pennsylvania relative to the existence and treatment of disease. It was the duty of the court below to refuse the charter if in the exercise of sound legal discretion he found its purpose in whole or part included anything injurious to the community.

Can it be said that there was an abuse of discretion in the finding in this case? We are not to consider the matter from either a theological or metaphysical standpoint, but only in its practical aspects. It is not a question as to how far prayer for the recovery of the sick may be efficacious. The common faith of mankind relies not only upon prayer, but upon the use of means which knowledge and experience have shown to be efficient. And when the results of this knowledge and experience have been crystallized into legislative enactments, declarative of what the good of the community requires in the treatment of disease, and of the qualifications of those who publicly deal with disease, anything in opposition thereto may fairly be taken as injurious to the community. Our laws recognize

disease as a grim reality to be met and grappled with as such. To secure the safety and protect the health of the public from the acts of incompetent persons, the law prescribes the qualifications of those who shall be allowed to attempt the cure or healing of disease. It is not for the purpose of compelling the use of any particular remedies, or of any remedies at all. It is only designed to secure competent service for those who desire to obtain medical attendance. In certain diseases the individual affected may be the only one to suffer for lack of proper attention; but in other types, of a contagious or infectious nature, they may be such as to endanger the whole community, and here it is the policy of the law to assume control and require the use of the most effective known means to overcome and stamp out disease which otherwise would become epidemic. In such cases, failure to treat, or an attempt to treat, by those not possessing the lawful qualifications, are equally violative of the policy of the law. It may be said that the wisdom or the folly of depending upon the power of inaudible prayer alone, in the cure of disease, is for the parties who invoke such a remedy. But this is not wholly true. "For none of us liveth to himself, and no man dieth to himself," and the consequence of leaving disease to run unchecked in the community is so serious that sound public policy forbids it. Neither the law, nor reason, has any objection to the offering of prayer for the recovery of the sick. But in many cases both law and common sense require the use of other means which have been given to us for the healing of sickness and the cure of disease. There is ample room for the office of prayer, in seeking for the blessing of restored health, even when we have faithfully and conscientiously used all the means known to the science and art of medicine.

The findings of fact, by the learned master, and his conclusions of law therefrom, and the opinion of the court below, in which they are summarized and approved, vindicate the action taken.

Under the well-defined policy of the law of Pennsylvania, as at present existing, we are satisfied that there was no abuse of sound legal discretion in refusing the application for a charter.

The appeal is quashed and the order refusing to approve the charter is affirmed.